CREAMERY PACKAGE MANUFACTURING COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*March 10—April 11, 1933.*

For the appellants there was a brief by *Riley & Ohm* of Madison, and oral argument by *Miles C. Riley* and *Howard F. Ohm*.

The *Attorney General* and *Mortimer Levitan,* assistant attorney general, for the respondent Industrial Commission.

FRITZ, J.  Plaintiffs commenced this action to set aside an award by the Industrial Commission of a death benefit because of the death of L. A. Forsyth, on November 28, 1930, as the result of typhoid fever contracted during the period of his employment by the Creamery Package Manufacturing Company as a sales engineer.  He resided at Waukesha, Wisconsin, but his services in that employment took

him away from his residence most of the time. He had to be at his employer's place of business in Chicago, and also call on its patrons and inspect their dairy-products plants in a number of states. His work necessitated using such means of transportation and obtaining his food and lodging at such places as were available to the traveling public. He was ill with typhoid fever when he came home on November 21, 1930. As the typhoid incubation period is considered to be from seven to twenty-one days, he must have contracted the disease by reason of exposure at some time between October 31 and November 14, 1930. The principal question on this appeal is whether there is evidence to establish with requisite certainty that the exposure of Forsyth occurred at some place, at which he was, and at some time between October 31 and November 14, 1930, while he was performing service growing out of and incidental to his employment.

On the one hand, there is evidence which established that from October 31 to November 14, 1930, no cases were reported of persons who were ill in Waukesha with typhoid; and that he spent two days of each week end there during that period, while visiting at home with his family. There is also competent evidence, which established that between October 31 and November 14, 1930, he was in Wisconsin, while at Milwaukee for three days, at Kenosha for two days, and Jefferson for one day, and while traveling between those cities and Waukesha and Chicago. In that connection it appears, from data compiled from printed copies of bulletins issued weekly by the United States Health Service, that no cases were reported of persons who were ill with typhoid in those cities between October 31 and November 14, 1930, but that there were reported fifteen of such cases in the first week, and five of such cases in the second week of that period, of persons ill somewhere else in the state of Wiscon-

sin. Likewise there was proof that between October 31 and November 14, 1930, Forsyth was in Chicago for three days on one occasion, and four days on a second occasion, and that, according to the weekly bulletin of the United States Health Service, there were reported seven cases, during the week of that first occasion, and one case during the week of the second occasion, of persons who were ill with typhoid in that city. From October 28 to October 31, 1930, he was in Louisville, Kentucky, and Indianapolis, Indiana, but no typhoid cases were reported in those cities during the week in which he was in those cities. However, it did appear from the United States Health Service bulletin that between October 31 and November 14, 1930, and while Forsyth, in addition to being in Chicago, Louisville, and Indianapolis, was of course also obliged to travel between those cities, in the states of Illinois, Kentucky, and Indiana, that there were reported for the first week, sixteen cases of typhoid in Illinois, nineteen cases in Kentucky, and fifteen cases in Indiana; and for the second week, fifteen cases in Illinois.

On the other hand, there is no evidence whatsoever that at any time between October 31 and November 14, 1930, Forsyth had come in contact with, or been in the presence of, any typhoid-infected person; or that he had been in any particular place where any such person had contracted typhoid; or that he had been exposed, in any particular place in which he had been, to any such cases, or to typhoid-fouled food, liquid, air, or other possible sources from which they arose. In view of the absence of any evidence in those respects as to the source of the infection, the case at bar differs materially from the typhoid-fever cases involved in *Vennen v. New Dells L. Co.* 161 Wis. 370, 154 N. W. 640, and *Scott & Howe L. Co. v. Industrial Comm.* 184 Wis. 276, 199 N. W. 159; the smallpox case involved in *Vilter Mfg. Co. v. Industrial Comm.* 192 Wis. 362, 212 N. W.

641; and the actinomycosis case involved in *Pfister & Vogel L. Co. v. Industrial Comm.* 194 Wis. 131, 215 N. W. 815. In each of those cases there was at least some evidence because of which it could reasonably be held that the source of infection could be determined to a reasonable certainty.

The commission in its memorandum decision recognized that the precise time and place at which Forsyth contracted typhoid will never be known. But the commission was of the opinion that it was certain that he did not contract it at home; that, on the basis of every reasonable and probable deduction from the facts of the case, he acquired the disease in his travels for his employer, and because of the hazard of the travel requirements of his employment; and that the facts are such as to "remove the case completely from the field of speculation." In connection with making the award, the commission found that the applicant's "contention that the disease was contracted outside his employment, under the proofs of the case, may not be rated at more than a speculative possibility."

Although, under the established rule applicable in cases involving the cause or origin of germ diseases, in which it is often difficult and even impossible to find the source from which the germ causing the disease has come, the Industrial Commission or the court can base its findings upon a preponderance of probabilities or of the inferences that may be drawn from established facts (*Acme Body Works v. Industrial Comm.* 204 Wis. 493, 497, 234 N. W. 756, 236 N. W. 378; *Pfister & Vogel L. Co. v. Industrial Comm., supra; Vilter Mfg. Co. v. Industrial Comm., supra; Hafemann v. Seymer,* 195 Wis. 625, 219 N. W. 375), that cannot be done when the proof does not pass beyond the stage of mere possibilities. Preponderance of mere possibilities is, of course, not the equivalent of a preponderance of probabilities. Mere possibilities leave the solution of an issue of

fact in the field of conjecture and speculation to such an extent as to afford no basis for inferences to a reasonable certainty, and in the absence of at least such inferences there is no sufficient basis for a finding of fact. It will not do to reach a conclusion in favor of the party on whom the burden of proof rests by merely theorizing and conjecturing. There must at least be sufficient evidence to remove the question from the realm of conjecture. *Lezala v. Jazek,* 170 Wis. 532, 536, 175 N. W. 87, 89, 176 N. W. 238. A finding of fact made by the commission cannot be based upon mere conjecture any more than a finding of fact by a court or jury. While it is within the province of the commission to draw inferences, they must be drawn from established facts which logically support them. If not so supported, the findings of the commission based on its inferences are mere conjecture in excess of its powers, and the action of the commission must be reversed. *Wm. Esser & Co. v. Industrial Comm.* 191 Wis. 473, 211 N. W. 150; *Voelz v. Industrial Comm.* 161 Wis. 240, 152 N. W. 830; *Tewes v. Industrial Comm.* 194 Wis. 489, 215 N. W. 898, 899.

It is true, as the commission stated in its memorandum decision, that "the contention that the disease was contracted outside his employment, under the proofs of the case, may not be rated at more than a speculative possibility." That statement is applicable principally to the time he spent at Waukesha, where he was of course "outside of his employment" to a greater extent than while he was anywhere else. Between October 31 and November 14, 1930, neither in Waukesha, while he was there, nor in any other city, excepting Chicago, was there any reported case of typhoid, while he was within a city. While he was within the city of Chicago, as well as while he was within the states of Illinois, Kentucky, and Indiana, he was but one person among several millions occupying extended areas. If it is but a speculative

possibility to assume that he contracted the disease while at Waukesha, as but one of the several million persons in Wisconsin, among whom five to seven cases a week had been reported, then why is it not likewise but an equally speculative possibility that he contracted typhoid at some other time or place, while he was but one of the several million persons in Illinois, Kentucky, Indiana, or the city of Chicago? Under the circumstances, further facts than the bare report of the mere existence of a relatively insignificant number (in view of the large populations and areas involved) of cases are necessary to remove the issue sufficiently from the field of speculation, to admit of a finding on the subject.

An objection to the use of printed copies of weekly bulletins issued by the United States Health Service, under acts of Congress, was based upon the failure to have those copies certified as is necessary to render copies of official records admissible in evidence under sec. 327.18, Stats. The objection is technically sound, but the resulting error could probably have been readily avoided by obtaining leave to procure and substitute duly certified copies. Although sec. 102.23 (2), Stats., provides that "the court shall disregard any irregularity or error of the commission unless it be made to affirmatively appear that the plaintiff was damaged thereby," and this court has held that "the Industrial Commission acting as an administrative board is not held to the same strict rule with respect to rulings on the admission of evidence as courts of law," and that "the admission of incompetent evidence will not operate to reverse the award if there be any basis in the competent evidence to support it" (*First Nat. Bank v. Industrial Comm.* 161 Wis. 526, 154 N. W. 847), nevertheless, a reversal may be inevitable when there is no competent evidence introduced as to a fact which must be established in order to support an essential finding (*International Harvester Co. v. Industrial Comm.* 157 Wis. 167, 147 N. W. 53), unless the fact can be considered to be a

matter of common knowledge or within the acquired expert knowledge of the commission, which it may apply without the formal taking of evidence (*Chicago & N. W. R. Co. v. Railroad Comm.* 156 Wis. 47, 56, 145 N. W. 216, 974).

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment setting aside the award made by the Industrial Commission.