JOHN JOSEPH DONLAN's (dependents') CASE.

Suffolk.  October 5, 1944. — November 30, 1944.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Workmen's Compensation Act*, Injuries to which act applies. *Proximate Cause.*

On conflicting evidence, the Industrial Accident Board was warranted in finding that an employee who was suffering from "coronary disease" sustained a coronary occlusion due to an unusual strain in pushing, unaided, a heavily loaded truck in the course of his work, and that his death immediately following resulted from "a personal injury arising out of and in the course of his employment" within the workmen's compensation act; such conclusion was not unwarranted as matter of

law even though, had he not sustained the occlusion when and where he did, he might eventually have sustained an occlusion, not arising out of his employment, at some other time and place.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board awarding compensation under the workmen's compensation act.

The case was heard by *Walsh*, J., and a final decree was entered in accordance with the board's decision. The insurer appealed.

*M. J. Aldrich*, for the insurer.

*W. H. Melley*, for the claimants.

QUA, J. Questions of notice and claim were waived at the argument. But the insurer still contends that the evidence does not warrant the finding of the board that the employee's death resulted from "a personal injury arising out of and in the course of his employment." G. L. (Ter. Ed.) c. 152, §§ 26, 31.

The immediate cause of death was coronary occlusion. There was little controversy as to what occurred before and at the time of the death. The employee, a man between fifty and sixty years of age, began working for the employer on June 1, 1942. His work consisted in pulling or pushing a truck loaded with paper from the "press room" to the "shipping room." The distance was about one hundred yards. It was necessary to place the truck upon an elevator by which it was lowered from the press room to a lower level, to propel it through a tunnel, to place it upon another elevator by which it was raised to the level of the shipping room floor, and then to set it in a proper place on that floor. Two or more men usually went with each truck load according to the weight of the load. The employee made approximately thirty trips in a day's work. Between three and four o'clock in the afternoon of July 11 the employee had pulled from the elevator into the shipping room a load weighing, with the truck, fifteen hundred ninety-five pounds and, as the board could find, was pushing it by means of the handle backwards "into place" on the floor. There was evidence that the other man assigned to that truck load was not then helping to move it. While

so pushing the truck, the employee suddenly fell flat on his back to the floor, became unconscious, and died on the spot shortly afterwards.

The insurer contends in substance that the coronary occlusion which was the immediate cause of death was the normal termination of "coronary disease"; that the employee gradually wore out as the result of the disease and sustained no "personal injury" within the meaning of the workmen's compensation law as the result of his work. *Maggelet's Case*, 228 Mass. 57.

The medical testimony was conflicting, but it included statements that the work the employee was doing "contributed" to his death; that the type of work he was doing put a severe mechanical strain upon his heart; that this "is known to increase the strain of the coronary arteries"; that when, because of coronary artery disease, these arteries cannot stand this strain "something happens, usually spasm of the artery which completes the final occlusion . . . of the artery . . .," shutting off the blood, so that a portion of the heart muscle no longer gets its blood supply and "undergoes a process of death," and the heart cannot function; that the employee's heart was capable of doing a certain amount of work, but when he put a burden upon it beyond its capacity occlusion resulted; that light work "would not have precipitated this"; that an isolated piece of work could very well produce the coronary occlusion, but it would not aggravate the condition of coronary sclerosis which precedes the occlusion; that the pushing "by himself" of a fifteen hundred ninety-five pound truck "would cause a sufficient stress or strain to cause coronary occlusion"; that it was not "progressive development of disease that produced this man's condition"; that the "work was a factor," and "must have had something to do with it"; that "hard work each day gradually contributed to the hastening of the development of the coronary heart disease" until it "reached a point where he could not go on any further and the heavy work brought on the coronary occlusion, all those things combined"; that his having the occlusion while putting a strain upon his heart was not mere

coincidence; and that the exertion upon the truck was "all one needs to precipitate the attack.";

It is unnecessary to describe in detail the evidence tending in the opposite direction. There was nothing to prevent the board from believing the evidence just recited. They could therefore warrantably find that while the employee was in a weakened and vulnerable condition the peculiar effort required to move the heavy truck in the performance of his work for his employer immediately brought on the occlusion. Within the authority of our decisions they could find that this was more than mere disease or progressive physical weakness, and that it amounted to personal injury of which the employee's work was the final contributing proximate cause. *Wiemert* v. *Boston Elevated Railway*, 216 Mass. 598. *Brightman's Case*, 220 Mass. 17, 20. *Fisher's Case*, 220 Mass. 581. *Madden's Case*, 222 Mass. 487. *Colantueno's Case*, 275 Mass. 1, 3–4. *Griffin's Case*, 315 Mass. 71. Compare *Herlihy's Case*, 267 Mass. 232, where the finding of the board was in favor of the insurer, and *Burns's Case*, 266 Mass. 516, 518, where there was no "special act or incident bringing a sudden strain upon the weakened heart." The findings which we have stated the board could warrantably make are in substance those which it did make and which it simply but sufficiently expressed with adequate subsidiary findings. *Cahill's Case*, 295 Mass. 538. *Sawyer's Case*, 315 Mass. 75, 79. They bring the case within the statute. The effect of these findings is not avoided, even if it be true that the employee might eventually have suffered an occlusion at some other time and place not arising out of his employment, if he had not suffered it when and where he did.

The insurer argues that there was error in admitting certain evidence in the cross-examination of a physician called by it, but the record does not show that this question was raised before the reviewing board. *Indrisano's Case*, 307 Mass. 520, and cases cited. We do not intimate that there was any error.

*Decree affirmed.*