GMEINER and others, Appellants, vs. INDUSTRIAL COMMIS-
SION and another, Respondents.

*October 18—November 20, 1945.*

For the appellants there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *H. H. Otjen.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

WICKHEM, J.  The question in this case is whether there is evidence to sustain the commission's finding that Walter Quandt's injury resulted from his employment.  This requires a statement of the circumstances of his death.

Walter Quandt died of a tetanus infection on February 27, 1944, following an onset which started two and one-half days previous to his death.  He was survived by his widow, who based her application for death benefits on the assertion that death arose out of decedent's employment.  Upon a hearing before the examiner the application was denied on the ground that this was wholly speculative.  The examiner's findings were reversed upon appeal to the Industrial Commission.

Quandt was a carpenter.  In February, 1944, he was engaged in remodeling a meat market.  This called for the taking out of old partitions, putting in a new floor, doing some repairs upon an icebox, and like operations.  It was necessary for deceased to handle old and new lumber, and the work was done in the vicinity of hides and carcasses as well as, occasionally, live animals.  After the death of Quandt, an autopsy was performed.  Several slivers were removed from decedent's

hand.  These slivers were not infected and the area in their vicinity gave no indication of infection or inflammation.  There was an abrasion on the right hand, apparently healed.  This was on the right tip of one finger and is the only lesion extending deeper than the superficial skin.  The widow testified that the decedent dressed this abrasion several times around February 7th, and that it was an ugly jab caused by the slipping of a drill when he was working at the butcher shop.

There is sufficient evidence to warrant the finding that the repair job engaged in by decedent involved exposure to tetanus infection in that he was handling old lumber; that animals were butchered in the room where he worked, and that there were hides in the room which decedent had to move out of his way when he was working.  There is medical evidence that tetanus is more prevalent in the summer, occurs frequently in the vicinity of animals; that manure is especially likely to contain tetanus germs; that unless the animals are kept clean, the outside of the hides is apt to be so infested; that dirt is a frequent source of tetanus infection.

The commission supports its award upon the following reasoning : Decedent had an injury to his right finger, which extended below the skin and into the flesh.  He sustained this while working in the butcher shop in the course of his employment.  While there, he was working under conditions favorable to tetanus infection.  While the wound showed no sign of local irritation or infection, the medical evidence is to the effect that this is not decisive in cases of tetanus.  From this, it is the conclusion of the commission that "the preponderance of probabilities" supports the inference that tetanus was acquired while engaged in employment and that it arose out of the employment.  The commission relies upon *Pfister & Vogel L. Co. v. Industrial Comm.* (1927) 194 Wis. 131, 215 N. W. 815, and distinguishes *Creamery Package Mfg. Co. v. Industrial Comm.* (1933) 211 Wis. 326, 248 N. W. 140, because that case involved typhoid and the person infected had been

traveling around and might as well have sustained the infection one place as another. There was medical testimony to the effect that a wound was the most likely place for germs to enter and that, while people have tetanus germs within their bodies and particularly in their intestinal tracts, and it is possible for a lesion to develop and germs to cause tetanus without an outside wound, the probability is the other way, and the history of this case indicates the finger as the portal of infection and the hides as the source of the tetanus germs.

The award is sustainable for the same reason that that in the *Pfister & Vogel L. Co. Case, supra,* was considered to be sustainable. The term "preponderance of probabilities" is doubtless not a wholly accurate one. Indeed, it is literally impossible to have a preponderance of probabilities. All that the court meant by the use of the term was that in a given situation the inferences are strong enough to point to a fact as a probability and not a speculative possibility. So stated, it is merely another way of saying that the inferences are in such shape as to constitute substantial evidence to sustain the findings of the commission. We consider that the evidence warrants such a conclusion here.

Objection is made by appellant that the commission resorted to standard medical textbooks to form and justify its conclusions as to the nature and likelihood of idiopathic tetanus. It is difficult to see why this is material if, as we have held, the findings of fact by the commission are sustainable. We are hardly in a position to supervise the acquisition or use by the commission of expert learning in the various fields which call for administrative action on its part.

*By the Court.*—Judgment affirmed.